462 So.2d 1380 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
OPELOUSAS CHARITY BINGO, INC., et al., Defendant-Appellant.
No. 84-1039.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1985.
*1381 William B. Faust, III, Asst. Atty. Gen., New Orleans, for plaintiff-appellee.
Darlene Simmons, Opelousas, for defendant-appellant.
Before DOUCET, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
The State of Louisiana sought to declare certain bingo games and games of chance conducted in Opelousas by Opelousas Charity Bingo, Inc. (OCBI), Don W. Smith, Jerry Kotwitz and Darrell Wagley a public nuisance and to permanently enjoin their operation. The trial court ruled that OCBI was not a bona fide organization or club entitled to an exemption from the state's gambling laws, and its operations constituted a public nuisance; therefore, it granted a permanent injunction against OCBI. Only OCBI brings this appeal, accordingly, the trial court judgment is final as to all other defendants. OCBI asserts that the trial court erred: (1) by its failure to grant a motion for continuance after evidence was presented that the defendants had inadequate notice of the hearing, depriving the defendants of due process of law as guaranteed by the Louisiana Constitution and the United States Constitution; (2) by granting an injunction after the State failed to present any evidence of wrongdoing or any illegal activities when the sole regulatory and investigatory authority lay with the licensing municipality; (3) by granting an injunction under LSA-R.S. 14:90 or 13:4724 in light of the law and the evidence presented at the hearing; and (4) by ruling that OCBI was not lawfully licensed because of OCBI's failure to state in the application for a license a specific charitable purpose for which its net proceeds should be devoted. Since OCBI did not brief assignment of error three, it is considered abandoned. Rule 2-12.4, Uniform Rules of the Courts of Appeal; Stephens v. State, Through Dept. of Transp., 440 So.2d 920 (La.App. 2nd Cir.1983), writ denied, 443 So.2d 1119 (La.1984). We affirm for the following reasons.

FACTS
Jerry Kotwitz and Don W. Smith, residents of Monroe, incorporated OCBI in Ouachita Parish on June 1, 1984. The articles of incorporation provide, inter alia, that: (1) its purpose and object are to provide services and help to needy families and *1382 people in St. Landry Parish; (2) it is organized exclusively for charitable, educational and literary purposes; (3) it is empowered to pay reasonable compensation for services rendered; and (4) no salaries shall be paid to any member or officer of the corporation. In summary, the articles are clear that OCBI purported to be a nonprofit organization dedicated to charitable, literary and educational purposes with no part of its net corporate profits inuring to the benefit of its officers.
In early June 1984 the City of Opelousas adopted an ordinance under the authority of R.S. 33:4861.1 et seq. which provided for the issuance of a license permitting charitable bingo and raffles within its corporate limits. On June 25, 1984, OCBI submitted an application to license its operation of charity bingo games and raffles. At an administrative meeting, the Opelousas City Council accepted OCBI's application and issued a license on October 3, 1984, permitting OCBI to conduct bingo in accordance with the Opelousas City Ordinance and R.S. 33:4861.1 et seq. The license specifically mentions that the corporation's net proceeds were to be devoted to persons, firms, agencies or institutions of educational, charitable, or public spirited needs who shall be designated by OCBI's board of directors and that the license was to be displayed where the games were to be conducted. There is no evidence that the license was displayed. On October 11, 1984, a second license was issued by the Opelousas City Clerk to OCBI to include raffles.
OCBI began conducting bingo and other games of chance in Opelousas at 1693 Creswell Lane on July 14, 1984, while its application was pending but without a license. Financial summaries prepared weekly by Borel Dauphin, OCBI's accountant, and filed with the City of Opelousas show that from July 14, 1984, through September 29, 1984, OCBI grossed approximately 1.3 million dollars from the playing of bingo, carney wheel games, and pull tab games. At the time of the hearing on the State's petition for injunctive relief, OCBI contended it was operating at a loss totaling approximately $68,000 and had donated only $500 to a needy organization.

MOTION FOR CONTINUANCE
OCBI argues that the trial court erred in failing to grant a motion for continuance alleging inadequate notice, thus depriving OCBI due process of law.
LSA-R.S. 13:4724 provides the procedure for the injunction to abate the nuisance. It provides, in pertinent part, as follows:
All actions brought under this Sub-part shall be tried in the following manner:

(1) Upon the filing of any suit the district judge, whether in term or vacation, shall immediately issue a rule on the defendant to show cause why the nuisance complained of should not be abated and why an injunction should not issue restraining the operation of the gambling house. This rule shall, at the time of its issuance, be fixed for hearing not later than, five days (counting Sundays, half-holidays and holidays) from the date of its issuance, and shall be heard by preference over all other matters and cases fixed for the same day and shall be heard continuously day after day until submitted for adjudication." (Emphasis added.)

The State's petition for an injunction was filed October 16, 1984, and the rule to show cause was issued that date setting the hearing for October 19. Although the record is void of any proof that OCBI was ever served, its attorney acknowledged that service was made on one of its agents for service of process in Ouachita Parish on October 18, 1984.
Initially OCBI objected at the hearing on October 19 and moved for a continuance alleging short notice and inadequate time to prepare for trial. The trial court referred to LSA-C.C.P. Art. 3602 which provides that a preliminary injunction shall not issue unless no fewer than two days notice is given after service of the notice. Therefore, the trial court announced that it was inclined to grant the continuance but it would also issue a temporary restraining order prohibiting OCBI's operation pending the hearing. OCBI then elected to withdraw *1383 its motion for continuance and the hearing proceeded to final adjudication.
By withdrawing its motion for a continuance OCBI waived its objection, therefore, we reject OCBI's complaint. Furthermore, there is no showing that OCBI was prejudiced by holding the hearing on the scheduled date, particularly since its accountant was present at the hearing and testified with all supporting documentation provided him by OCBI regarding its corporate income and expenditures.

PUBLIC NUISANCE
OCBI contends that its operations were legally authorized by the Opelousas City Council and do not constitute a public nuisance as provided in either R.S. 13:4721 et seq. or R.S. 14:90 et seq.
Unlike a preliminary injunction which requires only the presentation of a prima facie case to justify its issuance, a permanent injunction demands full proof by a preponderance of the evidence. Guidry v. Primeaux, 410 So.2d 1249 (La.App. 3rd Cir.1982); Picard v. Choplin, 306 So.2d 918 (La.App. 3rd Cir.1975); Schwegmann Bros. G.S. Mkts. v. Louisiana Milk Com'n, 290 So.2d 312 (La.1974); State Board of Education v. Anthony, 289 So.2d 279 (La.App. 1st Cir.1973), writ denied, 292 So.2d 246 (La.1974).
LSA-Const. Art. 12, Sec. 6 provides that the legislature shall suppress and define gambling.
LSA-R.S. 14:90 defines gambling as follows:
"A. Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit."
R.S. 13:4721 defines a gambling house in pertinent part as:
"... (1) any place whatever where any game of chance of any kind or character is played for money, for wagers, or for tokens, and where the conduct of such place operates, directly or indirectly, to the profit of one or more individuals and not exclusively to the direct profit of the actual participants in such game; and (2) any place whatsoever where races, athletic contests and sports and games are not actually held and where opportunity is afforded for wagering upon races, athletic contests, sports and games of chance."
LSA-R.S. 14:90.2(B) exempts certain organizations from the gambling laws and provides in pertinent part as follows:

"B. This Section shall not prohibit activities authorized under the Charitable Raffles, Bingo and Keno Licensing Law,1 nor shall it apply to bona fide fairs and festivals conducted for charitable purposes." (Footnote omitted.)

The Charitable Raffles, Bingo and Keno Licensing Law is contained in LSA-R.S. 33:4861.1 et seq. Particularly, R.S. 33:4861.4 provides in pertinent part:

"A. It shall be lawful for any incorporated municipality or, in absence of such municipality, the governing body of any parish to license bona fide veterans, charitable, educational, religious, or fraternal organizations, civic and service clubs, to hold and operate the specific kind of game or games of chance commonly known as raffle or raffles played by drawing for prizes or the allotment of prizes by chance, by the selling of shares or tickets or rights to participate in such game or games and by conducting the game or games accordingly, and the game of chance commonly known as bingo or keno played for prizes with cards bearing numbers or other designations, five or more in one line, the holder covering numbers, as objects, similarly numbered, are drawn from a receptacle and the game being won by the person who first covers a previously designated arrangement of numbers on such a card, by selling shares or tickets or rights to participate in such games and by conducting the games accordingly when the entire net proceeds of such games of chance are to be devoted to educational, charitable, patriotic, religious, or public spirited uses, and when so licensed, *1384 to hold, operate, and conduct such games of chance exclusively by its active members pursuant to this Part and for such licensee in such municipality or parish, to sell shares or tickets or rights to participate in such game or games of chance therein, and under such conditions and regulations for the supervision and conduct thereof, as shall be prescribed by rules and regulations duly adopted, from time to time, by the municipality or governing body of the parish not inconsistent with the provisions of this Part, and for any person or persons to participate in and play such games of chance conducted under any license." (Emphasis added.)

In its decision to declare OCBI's activities a public nuisance the trial court succinctly stated:

"I conclude that the defendant is not within the licensing provisions of Louisiana Revised Statutes 33:4861.1 et sequitur. That law was originally enacted (Act 609 of 1968) as part of the criminal code to modify the section prohibiting gambling. Its purpose was to immunize from criminal prosecution organizations and their members that have traditionally engaged in games of chance as a means of raising funds to promote their nonbusiness ends. It was not enacted to allow for the present situation. The law provides that municipalities may license `______bona fide veterans, charitable, educational, religious or fraternal organizations, civic and service clubs to hold and operate______' certain games of chance `______when the entire net proceeds of such games of chance are to be devoted to educational, charitable, patriotic or religious or public-spirited uses.'

The evidence does not indicate that defendant is conducting such a charitable endeavor as the law contemplates. It has operated at a substantial loss for two months although gross receipts approximated $1.2 million. Substantial funds are going to nonbingo enterprises servicing the bingo operation. The evils of gambling are present. Others are making money; defendant is not making money. No substantial charitable effect has been achieved; only one $500 donation has been made. The law does not contemplate such a lopsided situation.

The defendant is not such a bona fide organization or club as the law contemplates. More important, it is certainly not operating as such an organization or club."

Since R.S. 33:4861.1 et seq. was enacted as an exception to LSA-Const. Art. 12, § 6 which demands the suppression of gambling, it shall be strictly construed.
The carefully carved exception to the constitutional and statutory prohibition against gambling applies only to bona fide charitable organizations or clubs specifically named in R.S. 33:4861.4, e.g., "bona fide veterans, charitable, educational, religious or fraternal organizations, civic and service clubs." There is no statutory provision or jurisprudential law that allows a person and/or corporation with the exception of the aforementioned under R.S. 33:4861.4 to hold and operate games of bingo, raffle and keno. It was not the intent of the legislature to allow the operation of such games other than by those specifically mentioned. It is clear that the exception to the laws against gambling were meant to be strictly governed and controlled. A person and/or corporation operating under the guise of "nonprofit" invites gambling, as shown in the present case, and, as well stated by the trial judge, "the evils of gambling are present." We therefore find that the licenses to OCBI should not have been issued.
OCBI does not operate in the manner normally associated with any of the philanthropic, charitable and altruistic organizations which were intended to benefit from R.S. 33:4861.1 et seq. The record clearly reveals that it is difficult to differentiate between the nonprofit corporation, OCBI, and some of its board members. LSA-R.S. 33:4861.12 sets forth the requirements for reasonable expenses and prohibition against a commission, salary, compensation, reward or recompense to any person *1385 holding, operating or conducting permitted games of chance. In pertinent part it provides:
"... except such as are bona fide items of reasonable amount of goods, wares and merchandise furnished or services rendered, which are reasonably necessary to be purchased or furnished for the holding, operating or conducting thereof, under any circumstances whatever, and no commission, salary, compensation, reward or recompense whatever shall be paid or given, directly or indirectly, to any person holding, operating or conducting, or assisting in the holding, operation or conduct, of any game of chance so held, operated or conducted."
The building leased to conduct OCBI's operations is shared by Kotwitz to sell food and drink. Even though bingo games are held once weekly and OCBI shares rental space with the restaurant and beer concessions, OCBI pays rent of $6,000 per week to David Angel, a LaPorte, Texas resident and an OCBI board member, in cash payments most of the time; the total monthly rental on the building is $25,861. Jerry Kotwitz, one of OCBI's incorporators and a board member, is an investor not only in the beer concessionaire, Bingo Kitchen, but also in United Brokers, Inc., the owner of the restaurant. In addition United Brokers, Inc. has the weekly maintenance contract with OCBI and has been paid sums averaging in excess of $4000 weekly even though bingos are held only once a week and no more than six times a month. Jerry Kotwitz made two loans to OCBI, without corporate authority requesting such funds, and was partially repaid by simply withdrawing cash from the gross proceeds. The success of Bingo Kitchens and United Broker, Inc., is directly tied to OCBI's bingo operations. Bingo patrons are bused to Opelousas from cities in Louisiana (Shreveport, Baton Rouge, New Orleans, Leesville, Monroe, Lafayette, Pontchatoula, Alexandria) and Texas (Austin, Port Arthur, Navasota, Beaumont, Tyler, Houston, Humble, Bryan, Pasadena); the bus companies are paid by OCBI for the transportation as well as the promotion of OCBI's operations. Kotwitz's reasoning for making the loans to OCBI belies the purely philanthropic purpose of OCBI: he testified that without the influx of bingo enthusiasts the restaurant and beer concessions would not be profitable. The record convinces us that OCBI used the vehicle of a nonprofit corporation as a sham to front an illegal gambling operation.
The record shows that OCBI has conducted weekly games including bingo, carney wheel games, straight line bingo, and pull tabs since July 14, 1984. The first license issued to OCBI was dated October 3, 1984, to conduct bingo games. The second license issued to OCBI, although dated October 3, 1984, but in fact issued later, included bingo and raffles. However, straight line bingo and/or racehorse bingo, carney wheel, and pull tabs, the games OCBI continuously conducted since July 14, 1984, are games of chance not permitted by law. Since we have determined that OCBI is not a bona fide organization as intended by the legislature, and as such disqualified from the gambling exception provided in R.S. 33:4861.1 et seq. and 14:90.2, the State has proven by a preponderance of the evidence that OCBI's operations constituted a public nuisance as defined in R.S. 13:4721 et seq.
For the foregoing reasons the judgment of the trial court permanently enjoining Opelousas Charity Bingo, Inc. from conducting bingo and other games of chance at 1693 Creswell Lane, Opelousas, Louisiana, or conducting like operations of a public nuisance within the State of Louisiana is affirmed. All costs of the trial court and of this appeal are assessed against Opelousas Charity Bingo, Inc.
AFFIRMED.