551 So.2d 810 (1989)
Geneva BRIDGES, et al., Plaintiffs-Appellees,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al., Defendants-Appellants.
No. 88-750.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
Thomas & Dunahoe, Edwin Dunahoe, Natchitoches, for plaintiff/appellee Bridges.
Charles Seman, Natchitoches for plaintiff/ appellee, Doolittle.
Lester Kees, Leesville, for plaintiff/appellee Murray.
Gregory & Wright, Stuart Wright, Natchitoches, for plaintiff/appellee John Bridges.
Brittain, Williams, McGlathery & Passman, Joe P. Williams, Natchitoches, for other appellees.
Watson, Murchison, Crews, Arthur & Corkern, Ronald E. Corkern, Natchitoches, for defendant/appellee Natchitoches.
Robert L. Oliver, Baton Rouge, for defendant/ appellant State.
Before STOKER, DOUCET and LABORDE, JJ.
LABORDE, Judge.
This case is one of three suits consolidated for trial. The cases remain consolidated *811 on appeal and this day we render separate opinions in the consolidated cases entitled Doolittle v. State of Louisiana, Department of Transportation & Development, 551 So.2d 814 (La.App. 3d Cir.1989), and Murray v. State of Louisiana, Department of Transportation & Development, 551 So.2d 814 (La.App. 3d Cir.1989).
These three suits arise out of a collision occurring in Natchitoches Parish, Louisiana between an automobile driven by John Bridges and an automobile driven by Melvin Murray. Plaintiffs in these actions include the surviving occupants of both vehicles (John Bridges, Geneva Bridges, Jackie Doolittle and Rozelle Murray), in addition to the six major children of Melvin Murray. James Doolittle, individually, and in his capacity as the natural tutor for his minor children is also a plaintiff. The sole defendant in these actions is the State of Louisiana, Department of Transportation and Development (DOTD). After a trial on the merits, the trial court found in favor of the plaintiffs and against the defendant. Defendant now appeals that decision. Plaintiffs, John Bridges, Geneva Bridges, James Doolittle, and Jackie Doolittle, have answered the appeal, seeking an increase in their respective damage awards. We affirm.

FACTS
On January 14, 1986, at approximately 11:15 a.m., John Bridges was operating his vehicle in an easterly direction on Louisiana Highway 6 (La. 6), headed towards its intersection with Louisiana Highway 1 (La. 1).[1] Accompanying him were his wife, Geneva Bridges, and a guest passenger, Jackie Doolittle. As Mr. Bridges approached the intersection, he entered the lane specifically designated for left turning traffic and came to a stop at the red light signal governing the left turn lane. When the signal head in his lane turned to a green ball light, Mr. Bridges began to execute his left turn, proceeding in a northerly direction on La. 1. While he was executing the turn, his vehicle was struck broadside by a vehicle operated by Melvin Murray. Mr. Murray was driving in a westerly direction on La. 6, proceeding directly through the intersection. Mr. Murray was apparently driving the speed limit and had the green light for his lane of traffic. The collision occurred in Mr. Murray's lane of traffic.
Mr. Murray died from injuries sustained in the collision. The only other occupant of the Murray vehicle, Mrs. Rozelle Murray, received moderate injuries. The three occupants of the Bridges' vehicle, John Bridges, Geneva Bridges and Jackie Doolittle, all sustained serious injuries.
At this point, a brief history of the intersection is in order. Where the two routes intersect, La. 6 is a four lane highway with two lanes running east and two lanes running west, and La. 1 is a two lane highway running north and south. There are separate left and right turn lanes at all four approaches to the intersection. It is a high volume, high speed intersection. It is also exceedingly large, as it is the point where the main Natchitoches Parish north-south traffic artery meets the main east-west traffic artery. The evidence indicates that view of thru traffic from at least one of the left turn lanesthe one Mr. Bridges was inis partially obstructed when there is another vehicle in the opposing left turn lane.
Prior to September 27, 1985, the left turn lanes of the intersection were controlled by traffic signals which allowed for left turn maneuvers only on the left turn arrow signal, a so-called "protected" left turn. On that date, the signals were changed to a system of "permissive-protected" left turns. Under this system left turns were "protected" on the left turn arrow and were "permitted" (i.e., left turns would have to yield to thru traffic) when the green ball was indicated. The left turn signal for the eastbound La. 6 motorist had its protected phase at the end of the left turn signalization. No other signal in Natchitoches had this particular sequence. On the left side of the signals signs were hung which read "left turn yield on (green *812 ball)," and on the right side signs were hung which stated "left turn signal." On January 27, 1986, thirteen days after the accident which is the subject of this lawsuit, the signals were changed back to allow for left turns on a "protected" basis only.
The plaintiffs filed suit against DOTD alleging that it was negligent in the signalization and design of the intersection. Specifically, the plaintiffs contend that the left turn signal was dangerously confusing to the motoring public, as it gave drivers the impression that they had a protected turn when the green ball light was indicated. They argue that this was the proximate cause of Mr. Bridges' accident. Furthermore, the plaintiffs aver that the negligence of DOTD was compounded or exacerbated by its failure to change the signalization when it became aware of the fact that the signalization was causing an inordinate number of accidents and near misses.
DOTD contends that the signalization was implemented as part of a federal mandate to create uniformity in the nation's traffic signals. DOTD further points out that this signal is utilized throughout Louisiana and the rest of the United States. Finally, DOTD argues that Mr. Bridges is totally or at least partially at fault for the occurrence of the accident.
The trial court found that there was actionable negligence on the part of DOTD in failing to change the signal when it was aware that it was creating a hazardous condition. On appeal, DOTD raises three specifications of error:
"(1) The Court erred in finding that the Department of Transportation and Development was guilty of negligence which was the proximate cause of this accident and failing to find that the negligence of John Bridges was the sole proximate cause of the accident. Alternatively, the Court erred in failing to find the negligence of John Bridges to be a contributing cause of the accident.
(2) The Court erred in allowing accident reports not related to the subject accident to prove traffic signal created unreasonable hazard.
(3) The Court erred in allowing excessive damages for Mr. Bridges, Mrs. Murray, and Jackie Doolittle."
Specification of error number two was not briefed by the defendant, and, consequently, it is considered abandoned. Rule 2 12.4, Uniform Rules of the Courts of Appeal; State v. Opelousas Charity Bingo, Inc., 462 So.2d 1380 (La.App. 3d Cir.1985).

LIABILITY
It is well-settled in Louisiana jurisprudence that DOTD has a duty to construct and maintain state highways in a condition that is reasonably safe for motorists using ordinary care and prudence. DOTD is liable for damages only when the evidence shows that: (1) the hazardous condition complained of was patent or obviously presented an unreasonable risk to prudent drivers; and (2) DOTD had actual notice of the defect and failed to correct it within a reasonable time. U.S.F. & G. Co. v. State, Department of Highways, 339 So.2d 780 (La.1976); Holt v. Singletary, 441 So.2d 330 (La.App. 5th Cir.1983); Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3d Cir.), writ denied, 312 So.2d 340 (La.1975). In other words, DOTD can not knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. Deville v. State, Through DOTD, 498 So.2d 1142 (La.App. 3d Cir.1986). Where inadequate or improper signalization of an intersection creates an unusually hazardous risk to a driver exercising ordinary care and prudence, DOTD may be liable for damage caused by that hazardous condition. See Hatcher v. State, Through DOTD, 467 So.2d 584 (La. App. 3d Cir.1985); Hodges v. State, Department of Highways, 370 So.2d 1274 (La.App. 3d Cir.), writ denied, 374 So.2d 660, 661 (La.1979).
The trial court made the following findings regarding the liability of DOTD, which were recorded in its Reasons for Judgment:
"The evidence showed that from January 1, 1982 to September 26, 1985 there had only been four left turn accidents at this intersection. On September 27, 1985 the signalization was changed as described above and between then and January of 1986, when the signalization was changed back, there were 15 left turn accidents. One of these was the one which took Mr. Murray's life and severely injured the other occupants of the two vehicles.
Sergeant Thomas Delrie of the Natchitoches Police Department testified that this intersection was his primary traffic patrol location and that he parked his patrol unit (usually a motorcycle) in a highly visible location to encourage driver safety at this busy intersection. Despite his obvious presence, he observed *813 numerous violations of the signal and many of the resulting near-misses. When he issued citations the cited motorist invariably stated that he did not understand the signalization. Sergeant Delrie, an officer with several years of traffic patrol experience very candidly testified that he, likewise, found the signalization confusing. Sgt. Delrie further testified that the signalization was so confusing to the general motoring public that the local newspaper published an article explaining it. Perhaps as early as two days after the installation of the new signal, Sgt. Delrie requested of his superiors that D.O.T.D. be advised of the confusion and near misses.
Patrol officer Brandon of the Natchitoches Police Department testified to the same basic facts as did Sgt. Delrie, including the fact that D.O.T.D. was advised of the dangers at an early date.
The evidence as a whole left no doubt that the signalization was dangerously confusing to the motoring public, but the simple fact remained that this type of signalization was approved by N.T.S.B. and was in use, with apparent safety, all over the country. Why then was this type of signal so confusing at this intersection? Mr. Dwayne Evans, traffic engineer and former D.O.T.D. employee and former traffic engineer for the city of Baton Rouge answered this by pointing out that this type of signal is not well suited for intersections with separate left-hand turn lanes as was the case at this intersection. Had the separate left turn lanes not existed and the median not been so wide the signalization would have been proper and safe. However, with the intersection having the configuration that it did, the signal was in an improper, confusing and dangerous application."
To these findings, we think it is important to add the following. First, Loy Montgomery and Charles Blaisdell, who were both employed by DOTD, testified at trial that they were receiving complaints about the left turn signal as early as two to three days after it had been installed and that they had related these complaints to their superiors. Second, the plaintiffs' expert, Mr. Evans, testified that, considering the frequency of left turn accidents at this intersection, DOTD should have taken action to remedy the problem no later than sixty days after it was installed. In fact, Loy Montgomery testified that in the past DOTD has changed signals back within thirty to sixty days after they had been modified because the modifications were causing problems.
Under the circumstances involved in this case, we find no manifest error in the trial court's determination that DOTD's failure to change the signalization of this intersection, when it was aware of the hazard it posed and had reasonable time to correct it, constituted negligence which was the sole cause of this accident. Our brethren in the Fourth Circuit in Besnard v. State Department of Highways, 381 So.2d 1303, 1308 (La.App. 4th Cir.), writ denied, 385 So.2d 1199 (La.1980) have stated that:
"The decision of whether a condition of a highway actually is a dangerous and hazardous one to an ordinary prudent driver is a factual one, and the court should consider physical aspects of the roadway, frequency of accidents at that place in the highway and testimony of expert witnesses in arriving at this factual determination."
We are satisfied that the trial court took all of these factors in consideration in reaching its decision regarding the liability of DOTD.

QUANTUM
In its final specification of error, DOTD contends that the trial court's general damage awards to John Bridges, Rozelle Murray and Jackie Doolittle are excessive and amount to an abuse of discretion. Plaintiffs, John Bridges, Geneva Bridges and Jackie Doolittle have answered DOTD's appeal, seeking an increase in the trial court's general damage award. James Doolittle also answered the appeal, requesting an increase in his individual loss of consortium award. The assessment of damages is the province of the trier of fact, whose judgment is allowed great discretion and deference. A damage award will not be disturbed unless the record reveals that the trier of fact abused its great discretion. Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La.App. 3d Cir.), writ. denied, 457 So.2d 1195, 1198 (La.1984). The trial court awarded John Bridges $140,000 in general damages, Geneva Bridges $75,000 in general damages, Jackie Doolittle $100,000 in general damages and James Doolittle $30,000 on his individual loss of consortium claim. After a careful review of the record and the extent of the injuries, we find none of these awards to be an abuse of the trial court's discretion. Accordingly, *814 both the defendants' and plaintiffs' request to modify the awards are denied.
For the reasons assigned, the judgment of the trial court is affirmed. Costs are taxed to DOTD.
AFFIRMED.
NOTES
[1] It is undisputed that the intersection of La. 6 and La. 1 is under the exclusive jurisdiction, regulation and control of DOTD.