Dear Colonel Marchand:
This responds to your request for an opinion of this office regarding the regulation of charitable gaming activities pursuant to Louisiana gaming laws.
You point out the provisions of Louisiana Administrative Code Rule (LAC) 55:1705(D), and the fact that the United States has exclusive jurisdiction over the property constituting Fort Polk, pursuant to Louisiana Revised Statute 52:1 and 40 U.S.C. § 255.
Our responses follow the two questions which you present, as follows:
 1. Do private organizations, such as the Officers' Wives' Club, which conduct charitable gaming activities on post, and which take a percentage from the activities, require a license under Louisiana law?
Under Louisiana law, charitable gaming is an exception to the general statutory and constitutional prohibitions against gambling and is an activity which is closely regulated and strictly enforced according to applicable law. See Louisiana Constitution Article XII, Section 6; La. R.S. 33:4861.1, et seq.; State v. Opelousas Charity Bingo, 462 So.2d 1380 (La.App. 3rd Cir. 1985); and Theriot v. Terrebonne Parish Police Jury,436 So.2d 515 (La. 1983).
However, organizations such as the Officers' Wives' Club conducting gaming activities on property subject to exclusive federal jurisdiction are exempted under state law and not regulated by it. See LAC 55:1705(D).
 2. How do Louisiana gaming laws and license requirements apply to private organizations (again, such as the Officers' Wives' Club) which operate principally on Fort Polk, but whose gaming activities may include incidental sales of raffle tickets off post?
 Are such private organizations exempt from the licensing requirements because most of their charitable gaming is on post, or do these groups forfeit their exempt status and require a license when they leave the federal reservation?
State gambling laws have long been applied to federal enclaves through the Assimilative Crimes Act, 18 U.S.C. § 13. See, e.g., U.S. v. Sosseur, 181 F.2d 873, 875 (7th Cir. 1950); U.S. v. Casserino, 180 F. Supp. 288, 289 (E.D.N.Y. 1960). As with the Organized Crime Control Act, 18 U.S.C. § 1955, there have apparently been no cases where a violation of a state gambling licensing law has been prosecuted through the Assimilative Crimes Act.
Whether gambling licensing law would apply to a federal enclave through the Assimilative Crimes Act depends upon its classification as a civil/regulatory law or a criminal/prohibitory law. The Assimilative Crimes Act only authorizes the enforcement of state criminal laws. Pueblo of Santa Ana v. Hodell, 633 F. Supp. 1300, 1312 (D.C.C. 1987)
Using the analysis of the U.S. Fifth Circuit in Seminole Tribe of Florida v. Butterworth, 658 F.2d 310 (5th Cir. Unit B 1981), Louisiana's Charitable Raffles, Bingo and Keno Licensing Law would probably be adjudged to be regulatory in nature, rather than criminal. While the statute does provide for criminal penalties, the fact that licensed raffles are permitted would indicate that raffles are not "contrary to the public policy of the state." As a civil/regulatory law, LSA-R.S. 33:4861.1 would not be applicable to federal enclaves through the Assimilative Crimes Act.
However, the sale of raffle tickets is a part of the principal gaming activity and if such sales occurred off post, i.e., outside the territorial limits of the exclusive federal jurisdiction property, they would constitute gaming activity under Louisiana law and would require licensing by the private organization. That is, off post ticket sales would constitute a gaming activity subject to state regulation which would not meet the requirements for a licensing exemption under Rule 1705(D). Consequently, unless the organization conducting the raffle were licensed, off post sales might well constitute a misdemeanor under La. R.S. 33:4861.16B(2), which provides as follows:
 B. Any person, association, or corporation which commits any of the following acts shall, upon conviction, be subject to a criminal penalty, and be fined not more than five thousand dollars or imprisoned for one year, or both:
 (2) Holding, operating or conducting any game of chance either without a license issued by a parish, or municipal governing authority or without a license issued by the division.
However, if the entire raffle ticket sale transaction occurred on post, this would be within the terms of the exemption provided for by Rule 1705(D). Consequently, we suggest that private organizations at Fort Polk confine their gaming activities strictly to the post itself.
I hope this opinion is of assistance to you and if we may be of further help, please advise us.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: GARY L. KEYSER Assistant Attorney General
GLK/jb