Dear Mayor Savoy:
This letter is in response to your request for an Attorney General's opinion regarding the transfer of property from the Livingston Parish School Board to the Village of Port Vincent.
According to your letter and the documents enclosed therewith, in May of 1953 the Livingston Parish School Board provided the Village of Port Vincent with a perpetual right of use of a portion of property, known then as the "Port Vincent School Building" for a recreational center. The property has continued to be utilized by the Village as a community or recreational center since that time.
The School Board now desires to transfer ownership of the property to the Village. In order to insure that no laws are violated, you have asked this office to examine whether the School Board would have to follow public bid law in attempting the transfer of the property to the Village. We assume, for purposes of properly responding to your request, that the property in question is no longer needed by the School Board for school purposes.
Please be advised that it is the opinion of this office that the Livingston Parish School Board is not required to advertise for bids in order to sell the property in question to the Village. Our opinion in this regard is based upon the reasoning set forth in Attorney General's Opinions Nos. 95-325 and 92-545, copies of which are enclosed herewith.
Both of those opinions indicate that a school board may transfer property to another political subdivision without the necessity of public bid and advertisement, however, they both also indicate that any such sale or transfer must be made in accordance with La. Const. Art. VII, Sec. 14.
La. Const. Art. VII, Sec. 14 generally prohibits the funds, credit, property or things of value of the state and its political subdivisions from being loaned, pledged or donated to or for any person, association or corporation, public or private. We caution the Village and the School Board that any sale or transfer of public property must be accomplished within the constraints of this constitutional provision. It is our opinion that in order to avoid being in violation of Art. VII, Sec. 14, the School Board must receive adequate consideration from the Village for the property.
We hope that the foregoing information is of assistance to you, and that if we can be of further help you will not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv Enclosures
OPINION NUMBER 93-325
AUGUST 13, 1993
48 — GAMBLING — Lotteries, Bingo, Chance, Promotional Schemes
R.S. 33:4861.1
R.S. 55:1701 et seq R.S. 52:1, 40 U.S.C. § 255 LAC 55:1705(D)
Under Louisiana law, charitable gaming is an exception to the general statutory and constitutional prohibitions against gambling and is a closely regulated activity. State gambling laws are sometimes applied to federal enclaves through the Assimilative Crimes Act, 18 U.S.C. § 13 et seq.
The sale of raffle tickets is a gaming activity and if such sales occur off-post, i.e., outside the territorial limits of the exclusive federal jurisdiction of Fort Polk, they would constitute gaming activity under Louisiana law and would require licensing and regulation.
Unlicensed off-post gaming activities constitute a felony under R.S. 33:4861.16(B)2. Raffle tickets sales occurring on-post are within the terms of the exemption provided by rule 1705(D).
COL Michael J. Marchand Staff Judge Advocate Headquarters, Joint Readiness Training Center (JRTC) Fort Polk, Louisiana 71459
Dear Colonel Marchand:
This responds to your request for an opinion of this office regarding the regulation of charitable gaming activities pursuant to Louisiana gaming laws.
You point out the provisions of Louisiana Administrative Code Rule (LAC) 55:1705(D), and the fact that the United States has exclusive jurisdiction over the property constituting Fort Polk, pursuant to Louisiana Revised Statute 52:1 and 40 U.S.C. § 255.
Our responses follow the two questions which you present, as follows:
 1. Do private organizations, such as the Officers' Wives' Club, which conduct charitable gaming activities on post, and which take a percentage from the activities, require a license under Louisiana law?
Under Louisiana law, charitable gaming is an exception to the general statutory and constitutional prohibitions against gambling and is an activity which is closely regulated and strictly enforced according to applicable law. See Louisiana Constitution Article XII, Section 6; La. R.S. 33:4861.1, et seq.; State v. Opelousas Charity Bingo, 462 So.2d 1380 (La.App. 3rd Cir. 1985); and Theriot v. Terrebonne Parish Police Jury,436 So.2d 515 (La. 1983).
However, organizations such as the Officers' Wives' Club conducting gaming activities on property subject to exclusive federal jurisdiction are exempted under state law and not regulated by it. See LAC 55:1705(D).
 2. How do Louisiana gaming laws and license requirements apply to private organizations (again, such as the Officers' Wives' Club) which operate principally on Fort Polk, but whose gaming activities may include incidental sales of raffle tickets off post?
 Are such private organizations exempt from the licensing requirements because most of their charitable gaming is on post, or do these groups forfeit their exempt status and require a license when they leave the federal reservation?
State gambling laws have long been applied to federal enclaves through the Assimilative Crimes Act, 18 U.S.C. § 13. See, e.g., U.S. v. Sosseur, 181 F.2d 873, 875 (7th Cir. 1950); U.S. v. Casserino, 180 F. Supp. 288, 289 (E.D.N.Y. 1960). As with the Organized Crime Control Act, 18 U.S.C. § 1955, there have apparently been no cases where a violation of a state gambling licensing law has been prosecuted through the Assimilative Crimes Act.
Whether gambling licensing law would apply to a federal enclave through the Assimilative Crimes Act depends upon its classification as a civil/regulatory law or a criminal/prohibitory law. The Assimilative Crimes Act only authorizes the enforcement of state criminal laws. Pueblo of Santa Ana v. Hodell,633 F. Supp. 1300, 1312 (D.C.C. 1987)
Using the analysis of the U.S. Fifth Circuit in Seminole Tribe of Florida v. Butterworth, 658 F.2d 310 (5th Cir. Unit B 1981), Louisiana's Charitable Raffles, Bingo and Keno Licensing Law would probably be adjudged to be regulatory in nature, rather than criminal. While the statute does provide for criminal penalties, the fact that licensed raffles are permitted would indicate that raffles are not "contrary to the public policy of the state." As a civil/regulatory law, LSA-R.S. 33:4861.1 would not be applicable to federal enclaves through the Assimilative Crimes Act.
However, the sale of raffle tickets is a part of the principal gaming activity and if such sales occurred off post, i.e., outside the territorial limits of the exclusive federal jurisdiction property, they would constitute gaming activity under Louisiana law and would require licensing by the private organization. That is, off post ticket sales would constitute a gaming activity subject to state regulation which would not meet the requirements for a licensing exemption under Rule 1705(D). Consequently, unless the organization conducting the raffle were licensed, off post sales might well constitute a misdemeanor under La. R.S. 33:4861.16B(2), which provides as follows:
 B. Any person, association, or corporation which commits any of the following acts shall, upon conviction, be subject to a criminal penalty, and be fined not more than five thousand dollars or imprisoned for one year, or both:
 (2) Holding, operating or conducting any game of chance either without a license issued by a parish, or municipal governing authority or without a license issued by the division.
However, if the entire raffle ticket sale transaction occurred on post, this would be within the terms of the exemption provided for by Rule 1705(D). Consequently, we suggest that private organizations at Fort Polk confine their gaming activities strictly to the post itself.
I hope this opinion is of assistance to you and if we may be of further help, please advise us.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: GARY L. KEYSER Assistant Attorney General
GLK/jb
OPINION NUMBER 92-545
May 26, 1993
97 SCHOOLS SCHOOL DISTRICTS — Property, Contracts, Etc.
LSA R:S. 17:87.6
LSA R:S. 33:1321
LSA R:S. 33:132
Under the "Local Services Law" a parish school board is not required to advertise for bids in order to sell surplus school property to the parish where it resides.
Mr. Olden C. Toups Jr. Grant and Barrow 238 Huey P. Long Avenue P.O. Box 484 Gretna, Louisiana 70054
Dear Mr. Toups:
You have requested our opinion as to whether the Jefferson Parish School Board may sell surplus school property to the Parish of Jefferson without advertising for bids.
 La. R.S. 17:87.6 provides as follows:
 "Any parish or city school board may sell, lease or otherwise dispose of, at public or private sale, for cash or on terms of credit, any school site, building, facility, or personal property which is not used, and in the judgment of the school board, is not needed in the operation of any school or schools within its jurisdiction. Any such sale, lease, or disposal of such school property shall be on such terms and conditions and for such considerations as school board shall prescribe."
This statute provides the school board with the authority to sell school property once the school board declares that it is not needed for school purposes.
Because this transaction is taking place between two political subdivisions LSA-R.S. 33:1321 et seq., more commonly known as the "Local Services Law", is applicable. Basically, the "Local Services Law" allows any parish, municipality or political subdivision of the state to engage jointly in the construction, acquisition or improvement of any public project or improvement. Further under LSA-R.S. 33:1323 these provisions should be read liberally to promote such transactions and encourage the improvement of local services.
These provisions do not require a public bid process for the school board to sell the property. Consequently, it is our opinion that the property may be sold by the school board to Jefferson Parish without the necessity of public bid or advertisement. It would be advisable before such a transfer is consummated that an appraisal of the property be obtained and that the consideration received by the School Board approximate the appraised value of the property in order to avoid any possible conflict with the limitations of Art. VII, Sec. 14 of the Louisiana Constitution and the interpretation of that provision by the Louisiana Supreme Court in City of Port Allen v. Louisiana Municipal Risk,439 So.2d 399 (La. 1983).
I trust this answers your inquiry. If we can be of any further assistance to you please feel free to contact this office.
Sincerely,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ GLENN R. DUCOTE Assistant Attorney General
RPI/GRD/cdw:397z