640 So.2d 374 (1994)
Sherry Elizabeth NEWSOM, et al., Plaintiffs-Appellees,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellant.
No. 93-815.
Court of Appeal of Louisiana, Third Circuit.
March 30, 1994.
*376 J.B. Jones, Jr., Cameron, for plaintiff-appellee.
Scott James Pias, Lake Charles, for defendant-appellant.
Benjamin Wakefield Mount, Lake Charles, for defendant-appellee.
Before KNOLL and COOKS, JJ., and CULPEPPER[*], J. Pro Tem.
KNOLL, Judge.
This is a wrongful death action. Plaintiffs are the four major children of Juanita Domingue, the deceased driver of an automobile which collided with a loaded dump truck at the intersection of Arizona and Burton Streets in Sulphur, Louisiana. Plaintiffs settled with or dismissed all defendants except the State of Louisiana, Department of Transportation and Development (DOTD).
*377 The trial court held DOTD at fault in failing to adequately warn of the change from a four-way stop to a two-way stop at the intersection, and also held the decedent partially at fault; the trial court apportioned fault 70% to DOTD and 30% to the decedent. It awarded wrongful death damages of $70,000 each to three of decedent's major children and $40,000 to the fourth major child who was incarcerated at the time of his mother's accident and death. In addition, the trial court awarded $83,528 for decedent's loss of wages; made awards for medical specials and decedent's funeral expenses; and further recognized the intervention of Cigna Property & Casualty Companies, the worker's compensation carrier for decedent's employer, in the amount of $168,293.36.
DOTD appeals the trial court's finding of fault, causation and the damage award for decedent's loss of wages. We affirm.

FACTS
On July 17, 1991, at approximately 11:25 a.m., Mrs. Juanita Domingue was traveling east on Burton Street, a two-way two-lane roadway. As she approached the intersection with Arizona Street, a five-lane highway, she came to a complete stop. At the same time Allen Lee Breaux was driving a dump truck in the inside north bound lane of Arizona Street, approaching its intersection with Burton Street at a speed of approximately 35 m.p.h. When the dump truck was approximately 130 feet from the intersection, Mrs. Domingue started across Arizona Street. Breaux braked and swerved to his right, but he could not avoid the subsequent impact with Mrs. Domingue's car. Mrs. Domingue never regained consciousness after the collision and died 43 days later in St. Patrick Hospital.
For some time before the collision, the Arizona-Burton Street intersection was under construction. The construction at the intersection was part of a larger construction project which changed Arizona Street from a low volume, two-lane, part paved, part gravel street into a five-lane highway. Prior to the construction project, Burton Street (the Old Spanish Trail) was the favored street at this intersection. Cars traveling on Burton Street were not required to stop before crossing Arizona Street. Arizona Street was paved to the south of the Burton Street intersection, but was only a gravel road to the north of that intersection. Traffic on Arizona Street, traveling in either direction, was required to stop before crossing Burton.
During construction, the Burton-Arizona Street intersection was controlled by four-way stop signs. On July 8, 1991, the four-way stop signs on Arizona Street were removed and Arizona Street was barricaded to the north of its intersection with Burton Street. The four-way stop signs on Burton Street were also removed and replaced with oversized, 36 inch stop signs. "Stop Ahead" signs were also installed on Burton Street 600 to 800 feet from Arizona Street.
Mrs. Domingue lived in Westlake and traveled on Burton Street to Sulphur, Louisiana almost every day. On July 16, 1991, the barricades on Arizona Street north of Burton Street were removed and for the first time traffic on Arizona was allowed to proceed through this intersection without turning or stopping. Mrs. Domingue's collision with Breaux's dump truck was on the morning of the following day, July 17, 1991.

DOTD'S LIABILITY
DOTD contends that the trial court erred in finding it liable for the accident which caused Mrs. Domingue's death.
When there is evidence before a trier of fact which, upon reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, the appellate court, on review, may not disturb this factual finding in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In its argument before us, DOTD argues that it was not liable under negligence or strict liability. Since the enactment of LSA-R.S. 9:2800, the elements which a plaintiff must prove to recover damages from a public entity defendant based on the defective condition of a roadway are the same whether based on negligence or strict liability. Valet v. City of Hammond, 577 So.2d 155 (La.App. 1 Cir.1991). The plaintiff must *378 prove under either theory that: (1) the defendant owned or had custody of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; (3) the defendant had actual or constructive notice of the defect or risk of harm posed thereby and failed to take corrective action within a reasonable time; and, (4) causation. Id.
DOTD first argues that it had no notice that the failure to post additional warning signs created an unreasonable risk of harm.
With regard to DOTD's argument relative to notice, we refer to Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289 (La.1993), where the Supreme Court stated at 293:
"A public body charged with maintaining a public route cannot claim lack of knowledge of the need to provide warnings where the danger is obvious and inherent in the design and construction of the facility."
We find the same principle applicable in the present case. DOTD significantly changed the priority of travel from Burton to Arizona Street and is charged with knowledge of the need for warnings inherent in the signing design it chose to meet this change. Since it configured the design and signing of this intersection, DOTD cannot now contend that it did not have notice of the dangers inherent in its choice.
DOTD next contends that the trial court erred in imposing a duty upon it to place additional warning signs at the intersection. DOTD argues that it did everything within the professional judgment of its engineers necessary to warn the public to stop at Burton Street, and that the trial court improperly premised liability on the ground that signing at the intersection might have been improved.
Generally, DOTD has a duty to construct and maintain state highways in a condition which is reasonably safe for persons exercising ordinary care and reasonable prudence. Burge v. City of Hammond, 509 So.2d 151 (La.App. 1 Cir.), writ denied, 513 So.2d 285 (La.1987). Additionally, included within the general duty stated above is the specific duty of DOTD to properly sign and mark highways to alert unwary drivers to unusually dangerous conditions, such as unexpected, unmarked or improperly marked intersections. Dartez v. Powell Oil Company, 499 So.2d 1046 (La.App. 3 Cir.1986). As stated in Ledbetter v. State, Dept. of Transp. & Dev., 502 So.2d 1383, 1387 (La.1987), DOTD's duty to warn of hazardous conditions extends "not only to prudent and attentive motorists, but also to those ... who are momentarily inattentive."
Where inadequate or improper signalization of an intersection creates an unusually hazardous risk to a driver exercising ordinary care and prudence, DOTD may be liable for damage caused by that hazardous condition. Bridges v. State, DOTD, 551 So.2d 810 (La.App. 3 Cir.1989).
Our brethren in the Fourth Circuit stated in Besnard v. State Department of Highways, 381 So.2d 1303, 1308 (La.App. 4 Cir. 1980), writ denied, 385 So.2d 1199 (La.1980):
"The decision of whether a condition of a highway actually is a dangerous and hazardous one to an ordinary prudent driver is a factual one, and the court should consider physical aspects of the roadway, frequency of accidents at that place in the highway and testimony of expert witnesses in arriving at this factual determination."
The plaintiffs introduced the testimony of Duane T. Evans as an expert in traffic engineering. Evans opined that DOTD created a hazardous situation by not giving motorists on Burton Street some special warning of the change from "4-way stop" to "stop." Evans testified that after a driver repeatedly experiences a four-way stop sign, it is natural to expect that the four-way stop will be in place the next time the intersection is crossed. He further stated that when DOTD eliminated the four-way stop sign, it was important to have a warning of this change for a period of time thereafter in order to avoid accidents caused by motorists who, like Mrs. Domingue, had become accustomed to such a stop. Accordingly, Evans suggested that DOTD could have warned motorists on Burton Street with signs which *379 could be attached underneath the stop sign which might have read "No Longer A Four-Way Stop," "Observe Other Traffic," or "Cross Street No Longer Stops." Although plaintiffs introduced into evidence a sign used in another part of the state similar to Evans' proposal, he stated that he did not know of any ever being used in Louisiana, but that DOTD had the capability to make such a sign. Evans also stated that other traffic engineers could have opinions which differed from his.
DOTD's traffic engineers, Joseph Blaschke and Steve Jiles, testified that the department's manual did not provide for such signs as Evans proposed, and that they had never seen one. In general, they stated that the procedure DOTD used was adequate and accorded with the department's manual, that is use 4-way stop signs during construction and then, on completion, use signs indicated by the volume of traffic. For these reasons, they opined that DOTD chose to use the oversized, 36 inch "Stop" sign on Burton Street at its intersection with Arizona Street, preceded by the "Stop Ahead" sign.
The trial court emphasized the concern of Jiles and Johnny Morgan, DOTD's project engineer assistant in charge of the inspection and layout of the Arizona Street construction, on the issue of the need to notify the driving public of the signage change. Jiles, DOTD's traffic operations engineer for the district in which this accident occurred, stated that DOTD recognized that persons traveling on Burton Street had become accustomed to the four-way stop sign. As a result, Morgan, testified that he thought that it was necessary to notify the public prior to July 17, 1991, that the Arizona Street stop sign was going to be removed. Although Morgan testified that he did not have specific instructions from DOTD to do so, he worked with the City of Sulphur to try to publicize this change in the Sulphur newspaper. Jiles stated that he thought that the added publicity was desirable as an added safeguard but he would not classify this action as being necessary. The record shows that even this publicity did not reach Mrs. Domingue since she did not live in Sulphur.
The trial court's oral reasons further show that it considered Jiles's testimony that he studied the accident history of the intersection after Mrs. Domingue's accident and that within one month of the change of signage at this intersection there were six collisions like Mrs. Domingue's. Jiles's written report on his review of the adequacy of the signage at the intersection states:
"Traffic and physical conditions suggest that a traffic signal is needed at this intersection. Although the accident prevention warrant is the only warrant completely satisfied, existing traffic volumes are almost sufficient to warrant a traffic signal without regard to intersection's accident history. A construction project is now in progress involving the widening of Arizona Street from two lanes to five lanes, from I-10 northward to the southern end of the recently completed project. Once the construction project is completed, traffic volumes on Arizona Street at its intersection with Burton Street should increase significantly, thereby creating an even greater need for a traffic signal at this intersection."
Although in his trial testimony Jiles attempted to downplay this report, emphasizing that it was the increase of traffic from further completion of the construction project that prompted his recommendation for the installation of a red light at the intersection, Jiles's report clearly shows otherwise.
After carefully reviewing the record as a whole, we find no manifest error in the trial court's finding that DOTD's signage at the Burton-Arizona Street intersection was inadequate to warn motorists of the risks involved. As such, we find no clear in error in the trial court's finding that the signage at the intersection constituted an unusually hazardous risk to ordinarily prudent drivers such as Mrs. Domingue who were conditioned by DOTD's prior signage at the intersection that traffic on Arizona Street would stop before crossing Burton Street.
We now turn to DOTD's contention that despite its signage of the intersection, Mrs. Domingue's inattentiveness was the cause in fact of the accident. DOTD argues that Mrs. Domingue stopped at the Burton *380 Street stop sign, did not see the dump truck approaching, and drove into its path.
Plaintiffs assert that the jurisprudence recognizes a presumption that Mrs. Domingue would conduct herself reasonably and prudently in all respects to preserve her safety and life. See, Nowell v. State Farm Mut. Auto. Ins. Co., 576 So.2d 77 (La.App. 2 Cir. 1991), writ denied, 580 So.2d 923 (La.1991). They further assert that one is presumed to act in response to natural instinct of self-preservation and not expose one's self to unnecessary risk of death. Davila v. Southern Pacific Transp. Co., 444 So.2d 1293 (La. App. 5 Cir.1984), writ denied, 447 So.2d 1079 (La.1984).
Our review of the record shows that the totality of testimony of Edmond Wayne George, the driver of the car immediately behind Mrs. Domingue at the Burton Street stop sign, reflects that he could not say whether Mrs. Domingue looked and saw the dump truck. He candidly admitted that his attention was focused on the car ahead of him and not on the driver. Likewise, when we review the testimony of the dump truck driver, Allen Breaux, we do not find that he expressed an opinion of whether Mrs. Domingue saw his dump truck. Instead, Breaux confirmed that Mrs. Domingue took no evasive action.
Although the trial court never specifically made a finding of fact that Mrs. Domingue saw the dump truck, we find that considering the trial testimony and the jurisprudence cited above, it was reasonable for the trial court to infer from the evidence that since Mrs. Domingue did not take evasive maneuvers, she relied on her experience that the dump truck approaching on Arizona Street would stop before crossing Burton Street.
After reviewing the testimony of George, Breaux, and the investigating officer and mindful of our duty as a reviewing court, we find no manifest error in the trial court's factual conclusion that Mrs. Domingue, conditioned by DOTD's signage of the intersection in the months prior to the accident, entered the intersection on her experience that the dump truck had to stop at Arizona Street before crossing Burton Street.
In reaching this conclusion, we find it necessary to comment on DOTD's reliance on Vallery v. State through DOTD, 480 So.2d 818 (La.App. 3 Cir.1985), writ denied, 481 So.2d 1350 (La.1986), a case which dealt with an accident which occurred at an intersection which underwent a significant signage change similar to the present case. On the basis of Vallery, DOTD asserts that the signing configuration in effect at the Burton-Arizona Street intersection fulfilled DOTD's duty to the motoring public. It further urges that under LSA-R.S. 32:123(B) Mrs. Domingue had a duty to refrain from entering the intersection, whether there was a two-way or four-way stop, since the dump truck was approaching so closely that its presence constituted an immediate hazard.
We do not disagree with the holding in Vallery. Under the facts presented in that case, we find that the appellate court properly determined that the "trial court was correct in finding that the accident was caused by the sole negligence of Robert [the driver faced with a stop sign] in entering the intersection in the immediate path of the Vallery automobile." Id. at 822. Under the facts detailed in Vallery, it was clear that it was the driver's actions, not DOTD's alleged improper signage of the intersection, which caused the accident. We hasten to add, however, that at no point in Vallery was it stated that Robert relied on the assumption that the Vallery vehicle would not enter the intersection because under the old configuration of the intersection it (the Vallery vehicle) used to have to stop. Therefore we do not find that Vallery compels us to reach the same conclusion that Mrs. Domingue was the sole cause of the accident.
Likewise, we find no merit to DOTD's contention that the trial court's assessment of partial fault to Mrs. Domingue is logically inconsistent with its ruling on liability. We point out that based on the evidence before it, the trial court could have concluded that although Mrs. Domingue acted in accordance with her experience at the stop sign, i.e., that the dump truck would stop, she nevertheless failed in her perception that the dump truck did not constitute an imminent *381 hazard to her entry into the intersection. Thus some fault was attributable to her.
In summation, we find that the trial court properly considered: the signing history of the intersection; the effect that an additional warning sign of the change in the intersection could have had on Mrs. Domingue's actions; the testimony of the number of right angle collisions at the intersection after the stop sign was removed from Arizona Street; and the ultimate decision of DOTD to install a stop light at the intersection. In the final analysis, we find that the evidence supports the trial court's factual findings and there is no manifest error in the trial court's determination that DOTD was partially at fault.

DAMAGES FOR LOSS OF WAGES
DOTD next contends that the trial court erred in making an award to Mrs. Domingue's major children of $83,528 which represented the amount of wages she would have received until her sixty-fifth birthday. It argues that the trial court should only have awarded $2,460 for the wage loss Mrs. Domingue suffered between the time of her accident and her death 43 days later.
Loss of support is an item of damages which may be recovered in a wrongful death action. McQuarters v. Zegar, 466 So.2d 579 (La.App. 5 Cir.1985). In order for plaintiffs to be compensated for this loss, they must show prior actual support. Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4 Cir.1983). An award may be made to major children when there is evidence of actual support. Humphries v. La. Dept. of Public Works, 545 So.2d 610 (La. App. 3 Cir.1989), writ denied, 548 So.2d 1249 (La.1989).
From the outset, we note that DOTD does not contest the trial court's methodology in arriving at its figure on the loss of support or that Mrs. Domingue would have worked to the age of 65. Likewise, DOTD does not attack the trial court's award because it included all of Mrs. Domingue's major children. Instead, it focuses only on whether the trial court should have limited its award to the wages Mrs. Domingue actually lost between the time of the accident and her death.
In the present case, the record shows that Mrs. Domingue contributed financially in some to degree to all four of her children. Moreover, the record clearly reflects that Mrs. Domingue was the primary provider for her daughter, Debra Owens. It is unrefuted that Mrs. Domingue regularly purchased groceries for Debra, and paid her monthly house note, her prescription expenses, her electricity bill, and her gas bill. Debra testified that her mother paid her bills most of the time. In like vein, the record shows that Mrs. Domingue's son, Morris, was incarcerated and that Mrs. Domingue was his sole source of monthly finances.
Our review of the record shows that an award was due for Mrs. Domingue's loss of wages between the time of her accident and her death, and that an additional amount was due to at least some of Mrs. Domingue's children for the future loss of support they encountered. Even though the trial court did not differentiate its award between past loss of wages and the major children's future loss of support, we cannot say that the trial court's award was clearly wrong when it recognized that an award for future loss of support was justified by the evidence.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to DOTD.
AFFIRMED.
CULPEPPER, J. Pro Tem., dissents and assigns written reasons.
WILLIAM A. CULPEPPER, Judge Pro Tem., dissenting.

FAULT OF DOTD
To prove fault by DOTD, plaintiff introduced the testimony of Duane T. Evans as an expert in traffic engineering. Evans opined that DOTD created a hazardous situation by not giving motorists some special warning of the change from "4-way stop" to "stop." He suggested a temporary sign reading "No Longer a Four-Way Stop," or "Observe Other Traffic," or "Cross Street No Longer *382 Stops." Evans said the DOTD could make such signs, but he did not know of any ever being used in Louisiana. He testified that other traffic engineers could have different opinions.
DOTD's traffic engineers testified that the department's manual did not provide for such signs, and that they had never seen one. They stated generally that the procedure they used was best and was in accordance with their manual, that is, use 4-way stop signs during construction and then, on completion, use signs indicated by the volume of traffic, which in this case was the oversized, 36 inch "Stop" sign, preceded by the "Stop Ahead" sign. It was their opinion that additional signs, such as the ones suggested by the plaintiffs' expert, would have been confusing and thus hazardous. It was obvious to any motorist that the large five lane highway had the right of way.
In Vallery v. State through DOTD, 480 So.2d 818 (La.App. 3rd Cir.1985), which also involved signs at a newly constructed highway intersection, we stated the duty of DOTD as follows:
In determining whether the DOTD has met its duty to the motoring public, the fact that the signing of the intersection might have been improved does not render the department derelict in the discharge of its duty.
(Citation omitted.)
"The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it."
(Citation omitted.)
Under the rules quoted from Vallery, the signs erected here were clearly sufficient. Any reasonably prudent motorist should have known the five lane highway had the right of way and should have seen the large over-sized stopsign.

MRS. DOMINGUE'S FAULT
Plaintiffs contend that Mrs. Domingue saw the approaching dump truck, but, because she had frequently travelled Burton Street when it was a four-way stop intersection, she thought the intersection was still controlled by stop signs in all directions, and she believed that the dump truck would stop before it reached the intersection. The alleged negligence of DOTD is that it failed to adequately warn Mrs. Domingue that automobiles travelling on Arizona would no longer stop at its intersection with Burton.
In his written reasons, the trial judge does not expressly find that Mrs. Domingue saw the dump truck. He states she was contributorily negligent, that she was inattentive, and that after stopping she entered the intersection when it was not safe to do so because "she assumed the truck would stop." Apparently, the trial judge recognized it was not clear from the evidence whether she saw the truck. It would be difficult to find that she saw this large dump truck 130 feet away and travelling at a speed of 35 m.p.h. and decided to enter the intersection. She had to start from a dead stop and cross four lanes of traffic to avoid a collision with the truck. It should have been obvious that the truck could not stop at that speed and distance. To hold that she saw the truck and deliberately took such a risk is not reasonable.
I conclude that if the trial judge did intend to hold Mrs. Domingue saw the truck, he was clearly wrong. All of the evidence indicates she never saw it.
Edmund Wayne George, a disinterested eyewitness to the accident, was driving east on Burton immediately behind Mrs. Domingue. George said it was obvious to him that Arizona had the right of way; he also *383 saw the stop sign. He saw the dump truck approaching, at what he thought was a reasonable speed, in the inside north bound lane of Arizona. When Mrs. Domingue pulled out, the truck was in front of a certain house. In their briefs, both counsel gave this distance as 130 feet. George states the truck driver hit his brakes and swerved to the right, in a futile effort to avoid the collision. In describing Mrs. Domingue's actions, George testified:
"Q The passenger vehicle that was involved in the wreck, did it take any evasive action?
MR. JONES: You mean Mrs. Domingue, huh?
MR. PIAS: Mrs. Domingue's car.
A No, sir.
Q (Mr. Pias) It never swerved from its straight across path?
A No, sir.
Q Did it appear she ever saw the dump truck?
A No, sir, it didn't."
The driver of the dump truck, Allen Breaux, was the only other eyewitness. He describes Mrs. Domingue's actions substantially the same as George. The officer who investigated the accident found no skid marks or other indication of evasive action taken by Mrs. Domingue.
In brief, plaintiffs argue that Mrs. Domingue is presumed to have acted for her own safety, and that she would not have entered the intersection when the truck was only 130 feet away, if she had not believed it would stop. In my view, the presumption that she acted for her own safety supports a finding that she did not see the truck. It is obvious, from the accident itself, that she could not proceed in safety.
I conclude the only explanation for Mrs. Domingue's actions, which is reasonably supported by the evidence, is that she was inattentive, did not see the dump truck approaching, and drove into its path.
For the reasons assigned, I respectfully dissent.
NOTES
[*] Honorable William A. Culepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.