694 So.2d 599 (1997)
Carmen THOMPSON, et al., Plaintiffs-Appellees,
v.
Landry L. COATES, et al., Defendants-Appellants.
No. 29333-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
*601 Adams, Hudson, Potts & Bernstein by Jay P. Adams, Monroe, for Defendants-Appellants.
Kelly, Townsend & Thomas by T. Taylor Townsend, Natchitoches, for Plaintiffs-Appellees.
Before BROWN, GASKINS and PEATROSS, JJ.
BROWN, Judge.
This action arises out of a two car accident that occurred on a rural state highway. The primary issue on appeal is whether DOTD was at fault, and if so, to what degree. The trial court found DOTD liable, allocated it with 70% of the fault and awarded damages. We amend and as amended, affirm.

Facts
On September 15, 1991, on Louisiana Highway 4 in Caldwell Parish, Louisiana, a westbound vehicle driven by Carmen Thompson was struck by an eastbound vehicle driven by Landry Coates. The accident, which *602 was during a light afternoon rain, occurred when Mr. Coates lost control of his truck, crossed the center line and struck Ms. Thompson's automobile. Both Ms. Thompson and her sole passenger, her four-year-old daughter Whitney, sustained injuries.
Ms. Thompson, individually and on behalf of her minor daughter, filed suit against Landry Coates and the State of Louisiana, Dept. of Transportation and Development ("DOTD"), seeking damages for their injuries. Prior to trial, plaintiffs settled with Mr. Coates. Trial was held the week of September 27, 1993, however, the trial court's judgment was not rendered until April 5, 1996. The trial court found that both Landry Coates and DOTD were liable to plaintiffs and apportioned fault of 30% to Mr. Coates and 70% to DOTD. Damages of $1,039,493.70, subject to a 30% reduction, were awarded to plaintiffs.[1] It is from this judgment that DOTD has appealed.

Discussion

Liability/Fault of DOTD
The elements which a plaintiff must prove to recover damages from the state based on a defective condition of a roadway are the same, whether premised on negligence or strict liability. La.R.S. 9:2800; Hunter v. Dept. of Transportation and Development, 620 So.2d 1149 (La.1993); Faulkner v. State, Dept. of Transportation and Development, 25,857 (La.App.2d Cir. 10/26/94), 645 So.2d 268, writ denied, 94-2908 (La. 01/27/95), 649 So.2d 390.
A plaintiff must prove: (1) that the defendant owned or had custody of the thing which caused the damage; (2) that the thing was defective in that it created an unreasonable risk of harm to others; (3) that the defendant had actual or constructive knowledge of the defect or risk of harm and failed to take corrective action within a reasonable time; and (4) causation. Faulkner, supra; Newsom v. State, Dept. of Transportation and Development, 93-815 (La.App. 3d Cir. 03/30/94), 640 So.2d 374, writ denied, 94-1118 (La. 06/24/94), 641 So.2d 207.
DOTD has stipulated ownership and custody of La. Hwy. 4. However, DOTD contests the trial court's finding of a defect in Hwy. 4 and that such a defect caused plaintiffs' injuries.
The state has a duty to maintain highways and their shoulders in a reasonably safe condition and to remedy conditions creating an unreasonable risk of harm. Faulkner, supra; Roberson v. State through Dept. of Transportation and Development, 550 So.2d 891 (La.App. 2d Cir.1989). While not the insurer of the safety of drivers using state highways, the DOTD can not knowingly allow a condition to exist that is hazardous to a reasonably prudent motorist. Reid v. State, through Dept. of Transportation and Development, 25,778 (La.App.2d Cir. 05/04/94), 637 So.2d 618, writ denied, 94-1415 (La. 09/16/94), 642 So.2d 198.
The determination of whether a condition of a highway is dangerous is a factual one; the court should consider physical aspects of the roadway, frequency of accidents at that place in the highway and the testimony of expert witnesses. Newsom, supra; Simpson v. State through Dept. of Transportation and Development, 636 So.2d 608 (La. App. 1st Cir.1993).
Causation is also a fact-specific inquiry. The issue is whether defendant's conduct was a cause of plaintiff's harm. Rick v. State, Dept. of Transportation and Development, 93-1776 (La. 01/14/94), 630 So.2d 1271. Great deference is accorded the trier of fact on the question of causation. Rick, supra; Adger v. Dillard Department Stores, 27,582 (La.App.2d Cir. 11/01/95), 662 So.2d 864.
The following is taken from the trial court's written reasons for judgment:
On September 15, 1991, Carmen Thompson and her minor child, Whitney, were traveling in a westerly direction on Highway 4. On the same date, Landry Coates was traveling in an easterly direction on *603 Louisiana Highway 4. Prior to the point of impact, the Thompson vehicle was traveling in her lane of travel on a downward slope approaching a right-hand curve. At the point of impact, the Coates vehicle would have been traveling in the opposite direction, having just rounded and completed an uphill left-hand curve and entered into the straight-away. As the Coates vehicle completed the lefthand curve, his vehicle encountered a sheet of water causing him to lose control of same and strike the Thompson vehicle.
. . . . .
Coates testified that he traveled Louisiana Highway 4 in the same vicinity on a frequent basis and that he had seen water traversing the road on previous occasions. Therefore, the Court accepts Mr. Coates' testimony that the water was a substantial factor which caused him to lose control of his vehicle.
John Bradford testified as an expert in the field of civil engineering. In connection with his testimony, Mr. Bradford had surveyed and inspected the roadway and shoulders of Louisiana 4 in the vicinity of the accident. DOTD also inspected and surveyed the roadway and the shoulders in the vicinity of the accident. Both surveys leads the court to the inescapable conclusion that water in the eastbound travel lane would "funnel" and run down the eastbound travel lane for a distance of up to four hundred (400) feet at which point the water would turn approximately 90 degrees and begin to channel across the roadway where the slopes of the highway changed from crown to super elevated. The evidence shows that this condition constitutes a defect in the roadway and shoulders [which] were not designed or supposed to be maintained in a manner which would allow this manner (sic) to exist.
In addition to this defect, the surveys also indicate that the east bound shoulder was higher in elevation that the east bound travel lane causing water to drain from the shoulder back onto the east bound travel lane as opposed to draining away from the roadway and shoulders into the adjacent ditch. The Court accepts Mr. Bradford's testimony that there is approximately a 5,000 foot service area which ultimately drains across Louisiana Highway 4 in the area where Coates lost control of his vehicle. Consequently, in times of rainfall, and even after rainfall has ceased, a flow of water which varies in depth, travels down the east bound travel lane of Louisiana Highway 4 and ultimately traverses across the highway. Therefore, the Court concludes that the downhill flow of water which traverses across the Louisiana Highway 4 at this particular location is a defective condition and created an unreasonable risk of harm to the motoring public, particularly Landry Coates.
The Court also accepts the testimony of the plaintiffs' expert Dr. John Glennon, who opined that by allowing water to drain from the pavement and from part of the shoulder to the east bound travel lane, there is an extraordinary amount of water traversing across the Louisiana Highway 4 where Coates lost control of his vehicle. Further, the Court accepts Dr. Glennon's testimony that the extraordinary amount of water traversing across the highway at the super elevations [is] the worst place to have sheet flow across the pavement. The excessive water, coupled with a worn and polished roadway surface increases the risk of loss of traction control of their vehicle.
It is clear from the testimony of Dr. Glennon as well as Johnny Martin, Parish Superintendent for DOTD in Caldwell Parish, Louisiana, that Louisiana Highway 4 in the area where this accident occurred and its shoulders were not maintained in accordance with DOTD's own manual and that the same was a substantial factor in causing this accident. The Court finds that Dr. Glennon's opinion is consistent with the surveys and photographs which depicted a situation where water drained down the travel lane and traversed across the roadway at the super elevation.
. . . . .
The record contains no proof that the DOTD had actual notice of the defective condition. The evidence does show that *604 Landry Coates had witnessed this condition prior to the accident [on] numerous occasions. Additionally, Johnny Martin, Parish Superintendent for DOTD in Caldwell Parish, testified that he had seen water cross the road at the point where Coates allegedly encountered water, but stated that he did not think it was enough to cause a problem. Martin testified that his job duties called for supervision of the maintenance work on the roadway, shoulders and ditches in accordance with DOTD's own manual which were (sic) introduced into evidence. The Court concludes that based on the daily maintenance reports which indicated drainage problems on Louisiana Highway 4 between Mile Post 81.02 and 100.9 and the fact that DOTD totally disregarded its own manual for maintenance of state road systems, DOTD should have known of the defective conditions of Louisiana Highway 4 on the date of this accident and therefore, had constructive knowledge. Additionally, the Court concludes this condition was allowed to exist for an unreasonable period of time after DOTD should have known of the defective condition. The Court further finds that the cost to repair this defective condition was minuscule in consideration of the harm which could be caused as a result of this defect. Clearly, the State failed to take corrective action within a reasonable time.
Therefore, it is the Court's opinion that the water flowing across the roadway on the date of this accident was sufficient to give rise to the effect of hydro-planing and caused the Coates vehicle to lose control. Clearly, the defective condition of Louisiana Highway 4 on September 15, 1991, was a substantial factor in causing the plaintiffs' accident and resulting injuries.
An appellate court may not set aside a trial court's findings of fact in the absence of clear or manifest error. Stobart v. State, Dept. of Transportation and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). To reverse a trial court's factual determinations, a court of appeal must find from the record that there is no reasonable factual basis for the findings and that the findings are clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La. 1987).
The essence of Dr. Glennon's testimony was that rainwater draining from the pavement combined with water running back onto the pavement from the shoulder of the road. The confluence of these two water sources increased the depth to create a hazardous condition.
Although it was a light summer shower and Coates described the width of the water traversing the road as only six to eight inches, we cannot say that the trial court was clearly wrong in finding an unreasonably dangerous condition which contributed to the accident and plaintiffs' injuries.

Allocation of Fault
The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La. 01/16/96), 666 So.2d 607; De Los Reyes v. USAA Casualty Insurance Co., 28,491 (La.App.2d Cir. 06/26/96), 677 So.2d 668. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence. Clement, supra. An appellate court may reallocate fault only after it has found an abuse of discretion and then only to the extent of lowering or raising the percentage of fault to the highest or lowest point reasonably within the trial court's discretion. Hill v. Morehouse Parish Police Jury, 95-1100 (La. 01/16/96), 666 So.2d 612; Clement, supra.
With these precepts foremost in our consideration, we are constrained under the facts of this case to find the trial court allocation of fault clearly wrong and an abuse of discretion.
Landry Coates was 26 years old and lived approximately six miles from the accident site. He traveled Highway 4 daily. On the day of the accident, Coates left home at approximately 4:30 p.m. to drive to Columbia. When he left, it was a clear day. Shortly thereafter, a light summer shower occurred. Despite the rain, Coates went into the curve *605 at 60 miles per hour. The posted sign suggested that the curve speed should not exceed 40 miles per hour. Coates was driving a 1985 Ford pick-up truck. The two rear tires on the truck were bald and slick. When he hit the water, Coates veered and cut his wheel to straighten the truck. When he saw plaintiff's vehicle, he hit his brakes and lost control. Coates testified that, except for his bad tires, the accident would not have happened. Coates' speed and defective tires were clearly the major cause of the accident.
According to Coates, the amount of water crossing the road was only six to eight inches wide. He was unable to distinguish the water's depth. Under the totality of these circumstances, Coates was the major cause of the accident. We feel that the greatest amount of fault that could be contributed to the state is 30% and that 70% of the fault for this accident should have been allocated to Coates.

Damages
DOTD contends that the damages awarded to plaintiffs, Carmen and Whitney Thompson, are excessive.
Before a trial court's award of damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the instant case. Reck v. Stevens, 373 So.2d 498 (La.1979); Faulkner v. State, Dept. of Transportation and Development, 25,857 (La.App.2d Cir. 10/26/94), 645 So.2d 268. A damage award should not be disturbed by the reviewing court absent a showing of a clear abuse of discretion. Theriot v. Allstate Insurance Co., 625 So.2d 1337 (La.1993); Faulkner, supra.

Whitney Thompson
The trial court awarded Whitney Thompson damages totaling $487,405.64. This award includes general damages of $425,000 and special damages of $62,405.64. DOTD urges that the general damage award is clearly excessive and that the award for future medical expenses should be reduced by one-half.
Damages for future medical costs must be established with some degree of certainty. An award for future medical expenses will not be made absent medical testimony that they are indicated and setting out their probable cost. Killough v. Bituminous Casualty Corp., 28,329 (La.App.2d Cir. 05/08/96), 674 So.2d 1091; Durkee v. City of Shreveport, 587 So.2d 722 (La.App. 2d Cir. 1991), writ denied, 590 So.2d 68 (La.1991).
Whitney Thompson, who was four years old at the time of the accident, was hospitalized for thirteen days. As a result of the accident, Whitney sustained severe facial fractures and lacerations and four of her baby teeth were knocked out. Her treating physicians were Dr. Thomas C. Fields, Jr., an ear, nose and throat specialist, and Dr. Eric T. Geist, an oral and maxillofacial surgeon. Whitney was also evaluated by Dr. Simeon Wall, a plastic surgeon.
One of the lacerations penetrated through to Whitney's nasal passage and the interior of her nose. According to Dr. Fields, Whitney would suffer from a closed or restrictive nasal passage, which would increase her susceptibility to nasal and sinus drainage and infection. Dr. Fields opined that it was more probable than not that Whitney would require future sinus surgery with an approximate cost of $12,000.
Dr. Geist inserted three bone plates to stabilize the facial fractures. These plates were removed approximately three months after the accident. Dr. Geist stated that it was likely that Whitney will have some growth discrepancy in the transverse plane of her palate and thus require future surgery. Dr. Geist also testified to the likelihood that Whitney would require surgical intervention to expose one or more of her permanent teeth. The estimated cost of such surgery is $6,200.
Dr. Wall examined Whitney's scars. He identified nine scars of varying size and severity. According to Dr. Wall, Whitney will need to undergo a two stage scar revision and rhinoplasty to correct the septuple deformity. These procedures will cost approximately $15,000.
*606 Considering the severity, nature and duration of Whitney's injuries, as well as the necessity of future surgical intervention, we do not believe that the trial court abused its discretion in its awards of general damages and future medical expenses.

Carmen Thompson
The trial court awarded Carmen Thompson damages totaling $552,088.12. This award includes general damages of $300,000 and damages for lost wages/loss of earning capacity of $215,150.20. DOTD asserts that the general damage award is clearly excessive and that the award for lost wages/loss of earning capacity is not supported by the record.
General damages involve mental and physical pain and suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Keeth v. State through Dept. of Public Safety and Transportation, 618 So.2d 1154 (La.App. 2d Cir. 1993).
A plaintiff's loss of earning capacity must be proved by a preponderance of the evidence. Harig v. State of Louisiana, Board of Elementary & Secondary Education, 25,702 (La.App.2d Cir. 03/30/94), 635 So.2d 485. This requires the presentation of medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident. Aisole v. Dean, 574 So.2d 1248 (La.1991). The fundamental inquiry is whether plaintiff is disabled from doing work for which she is fitted by training and experience. Williams v. City of Monroe, 27,065 (La.App.2d Cir. 07/03/95), 658 So.2d 820.
Carmen and Whitney Thompson were taken to St. Francis Medical Center in Monroe following the accident. Ms. Thompson's injuries included a dislocated right hip, lacerated right knee and chest contusions. Dr. Douglas Liles performed a closed reduction to replace Ms. Thompson's hip into the socket. Following this procedure, Ms. Thompson was in traction for 15 days. Upon her discharge from the hospital on October 11, 1991, Ms. Thompson was using a walker for support.
Because dislocation tears away a lot of the cartilage and soft tissue supplying blood to the hip, Dr. Liles was concerned that Ms. Thompson might develop avascular necrosis or degenerative arthritis. However, at trial Dr. Liles opined that Ms. Thompson had only a slight chance of developing avascular necrosis, although she was at risk for developing arthritis in the future.
Ms. Thompson continued follow-up treatment with Dr. Liles. On January 1, 1992, Dr. Liles counseled Ms. Thompson to engage in more activity, get rid of her cane and return to employment in the near future. Ms. Thompson was released to return to light duty work on April 23, 1992. Because of continued pelvic, buttock and back pain, an MRI of Ms. Thompson's spine was performed on May 26, 1992. The MRI revealed mild disk protrusion at L-5, S-1. Dr. Liles noted that Ms. Thompson's disk injury was minor and that there was no nerve impingement. Dr. Liles advised Ms. Thompson to return to regular employment on July 9, 1992.
Dr. Liles assigned Ms. Thompson a future permanent disability of 20%. Dr. Liles noted that it is likely that Ms. Thompson will wear out her hip faster because of her weight and low level of activity. However, there is a good chance that she will not require future hip replacement surgery; Dr. Liles stated that the probability of future surgery was approximately 15%.
Dr. Liles noted that Ms. Thompson has gained more than 50 lbs. since the accident. He stated that the best way for Ms. Thompson to alleviate her continued hip and back pain would be for her to lose weight and increase her activity level. Dr. Liles also testified that since the accident, Ms. Thompson has been depressed.
Dr. Liles opined that it was in Ms. Thompson's best interest to return to work as an L.P.N. According to Dr. Liles, although she may experience some difficulty, there are many aspects of her job she is able to perform.
As for future treatment, Dr. Liles estimated that Ms. Thompson will require treatment once or twice a year and will continue to take anti-inflammatories and over-the-counter pain medication.
*607 Viewing the evidence in the light most favorable to plaintiff, Carmen Thompson, and considering the severity, nature and duration of her injuries, as well as the prognosis for recovery, we find that the trial court abused its discretion in awarding general damages of $300,000.
We have reviewed jurisprudence involving similar injuries and conclude that the most the trial court could have awarded Ms. Thompson for her injuries is $200,000.[2] We will therefore reduce this award accordingly.
As for plaintiff's entitlement to damages for lost earning capacity, we note that her treating physician, Dr. Liles, recommended as early as four months after the accident that Ms. Thompson return to work as an L.P.N. In fact, plaintiff returned to work at Parkview Care Center in May 1992, approximately seven and one-half months post-accident. Thereafter, Ms. Thompson was terminated in August or September 1992. Two weeks later, she went to work at Autumn Leaves Nursing Home, where she was employed for one month before she was fired for calling in sick. Ms. Thompson noted that none of her supervisors had any complaints about her job performance and that she has placed several job applications, but has not been able to secure other employment.
Dr. Liles testified that nothing prevented Ms. Thompson from continuing to work as an L.P.N., and in fact he encouraged her to do just that. Dr. Liles did opine that Ms. Thompson would benefit immensely from engaging in a wellness program which included a plan of weight reduction and exercise.
The record is devoid of any medical evidence to support the trial court's conclusion that Ms. Thompson has sustained a loss of earning capacity. We are thus constrained to amend the trial court's award to reflect only the wages lost by Ms. Thompson from the date of the accident until her subsequent return to work in May 1992; the record reveals this amount to be $8,940.

Decree
In accordance with this opinion, we amend the judgment of the trial court as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:
I. There be judgment herein for plaintiff, Carmen Thompson on behalf of her minor daughter, Whitney Thompson, and against defendant, the State of Louisiana, for damages in the amount of $146,221.69 ($487,405.64 reduced by Landry Coates' 70% fault), together with legal interest thereon from date of judicial demand until paid;
II. There be judgment herein for plaintiff, Carmen Thompson, and against defendant, the State of Louisiana, for damages in the amount of $62,682 ($208,940 reduced by Landry Coates' 70% fault), together with legal interest thereon from date of judicial demand until paid;
III. The defendant, the State of Louisiana, is to pay all costs of these proceedings, to the extent allowed by law.
NOTES
[1] Plaintiffs settled their claim against Landry Coates and his insurer, Worldwide Underwriters Insurance Company, and received the sum of $195,000. They also received $22,000 (med pay, uninsured motorist coverage) from their insurer, State Farm Mutual Automobile Insurance Company.
[2] See Wilson v. National Union Fire Insurance Co., 27,702 (La.App.2d Cir. 12/06/95), 665 So.2d 1252 ($80,000); Maranto v. Goodyear Tire & Rubber Co., 25,114 (La.App.2d Cir. 05/10/95), 661 So.2d 503 ($150,000); Richard v. Teague, 92-17 (La.App. 3d Cir. 05/04/94), 636 So.2d 1160 ($110,000); LaCombe v. Olin Moss Regional Hospital, 617 So.2d 612 (La.App. 3d Cir.1993) ($200,000); Katsanis v. State Farm General Insurance Co., 615 So.2d 1114 (La.App. 5th Cir. 1993) ($120,000); Hoffman v. Schwegmann Giant Super Markets, Inc., 572 So.2d 825 (La.App. 4th Cir.1990) ($90,000).