712 So.2d 177 (1998)
Vaudie BRISTER, Plaintiff-Appellant,
v.
CONTINENTAL INSURANCE COMPANY, et al., Defendants-Appellees.
No. 30429-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*178 Hesse & Butterworth by Michael O. Hesse, St. Francisville, for Plaintiff-Appellant.
John Haas Weinstein, Opelousas, Gold, Weems, Bruser, Sues & Rundell by Sam N. Poole, Jr., Alexandria, for Defendants-Appellees Nursing Home Management Co., Inc.; Parkview Care Center, Inc.; and Continental Ins. Co.
Hailey, McNamara, Hall, Larmann & Papale by Frederic Theodore LeClercq, Metairie, for Plaintiff-Appellee Home Ins. Co.
*179 Carmouche Law Firm by David R. Frohn, Lake Charles, for Defendant-Appellee Century Mfg. Co.
Before BROWN, WILLIAMS and STEWART, JJ.
STEWART, Judge.
Vaudie Brister filed this action against Parkview Care Center, Inc., Continental Insurance Company (Parkview's insurer), Century Manufacturing Company, and The Home Insurance Company (Century's excess insurer). After Mrs. Brister's death, her children were substituted as plaintiffs. The jury rendered a verdict awarding general damages in the amount of $7500 as a result of the July 9, 1992 accident, finding that medical expenses incurred for the July 13 through July 29, 1992 hospitalization were not a result of the accident, and finding that the accident was not a substantial factor in the death of Mrs. Brister. The Bristers appeal. We affirm.

FACTS
On July 9, 1992, while a resident at Parkview, Mrs. Brister fell from a lift seat used to transfer her from a whirlpool bath to her wheelchair and struck her head on the tile floor. Mrs. Brister was treated at the local emergency room for a lacerated forehead and was diagnosed with a concussion. After returning to Parkview, Mrs. Brister complained of headaches the next day. On July 12, 1992, Mrs. Brister was treated at the emergency room for dehydration and returned to the nursing home.
The following morning, July 13, 1998, she was again admitted to Humana Hospital where she remained until July 29, 1992. Dr. Leonard Collier treated Mrs. Brister for a urinary tract infection with a temperature of 106.1 degrees. She also exhibited symptoms of sluggishness, drooling and slowness in responding. Dr. Collier was concerned that Mrs. Brister had sustained a subdural or epidural hematoma when she fell but also noted that her symptoms were indicative of a cardiovascular attack or a stroke. On July 17, 1992, Mrs. Brister suffered a transient ischemic attack which was resolved within 24 hours. On July 29, 1992, she was discharged to Autumn Leaves Nursing Home.
After discharge from the hospital, Mrs. Brister's health continued to deteriorate. Approximately a year after her fall, Mrs. Brister was admitted to Charter Forest Hospital in Shreveport, Louisiana, for evaluation by Dr. Louis Cenac. Dr. Cenac consulted with Dr. Paul Ware, a neurologist, who examined Mrs. Brister during her admission to Charter Forest.
Mrs. Brister's death on January 5, 1994, was attributed to multiple organ disease after she experienced a myocardial infarction. Dr. Collier signed the death certificate.
After the July 9, 1992 accident, Mrs. Brister instituted this litigation. Upon her death, her children were substituted as plaintiffs. Following jury trial on December 2 through December 4, 1996, the jury returned a verdict awarding damages in the amount of $7500 for injury resulting from the July 9, 1992 fall and finding that the accident did not cause medical expenses incurred between July 13 and July 29, 1992 nor did it contribute to Mrs. Brister's death. A final judgment in accordance with the jury verdict was signed on January 16, 1997. Hearing on the Bristers' post-trial motions seeking judgment notwithstanding the verdict, additur or, alternatively, new trial was held on March 12, 1997. A judgment denying the Bristers' motions was signed on March 24, 1997. On April 13, 1997, the Bristers filed a motion for appeal. The trial court signed the order granting the appeal on April 28, 1997. The Bristers assign two errors.

DISCUSSION
First, the Bristers assign as error the trial court's denial of the motion for new trial. That motion was based upon the allegedly improper ex parte communication between Dr. Ware and defense counsel which the Bristers' contend is a violation of the patient-physician privilege and the consequent testimony of Dr. Ware at trial. Second, the Bristers assign as error the trial court's denial of the motion for judgment notwithstanding the verdict contending that the jury verdict was clearly contrary to the law and evidence "since the overwhelming preponderance *180 of evidence presented established that the original Plaintiff, Vaudie Brister, suffered a concussion which led to a medical condition for which she was treated between the dates of July 13, 1992, and July 29, 1992 ..."
A trial court's denial of motions for judgment notwithstanding the verdict and new trial is an interlocutory order, not a final, appealable judgment. In Hayes v. Hayes, 607 So.2d 3, 5 (La.App. 2nd Cir.1992), this court explained:
... denial of a motion for new trial is an interlocutory judgment which does not cause irreparable injury and is therefore nonappealable.
However, where the motion for appeal refers to a specific judgment denying a motion for new trial, but the appellant exhibits the clear intention (from his brief and argument) to appeal instead from an adverse judgment on the merits, then the appeal should be considered.
Although the Bristers' motion for appeal refers to the March 24, 1997 judgment denying their motion for judgment notwithstanding the verdict, additur or, alternatively, new trial, an examination of the Bristers' appellate brief indicates that they seek relief from judgment on the merits. Therefore, we find this matter appropriate for decision on the merits despite the language in the motion for appeal.

Testimony of Dr. Paul Ware
The Bristers assert that the ex parte communication between Dr. Ware and defendants violated the doctor-patient privilege, that Dr. Ware's trial testimony should have been excluded due to this violation, and that the introduction of Dr. Ware's testimony constitutes prejudicial error, citing Boutte v. Winn-Dixie Louisiana, Inc., 95-1123 (La. App. 3rd Cir. 4/17/96), 674 So.2d 299. However, in that case, the issue presented to the appellate court was "whether defendant's illicit introduction of privileged evidence and plaintiff's timely objection mandate reversal." Boutte v. Winn-Dixie Louisiana, Inc., 95-1123 at p. 9, 674 So.2d at 305.
In the instant case, the Bristers failed to timely object to the introduction of alleged privileged evidence. At the pre-trial conference held on June 25, 1996, defense counsel hand delivered to counsel for the Bristers a copy of defendants' pretrial memorandum, which indicated that defendants intended to call Dr. Ware as an expert witness. The pretrial order signed by the trial court on June 25, 1996, established deadlines of November 4, 1996, for filing motions in limine, and October 15, 1996, for completion of discovery depositions. A supplemental pretrial memorandum, filed by Century on September 18, 1996, also listed Dr. Ware as a medical expert witness. Although aware that defendants intended to call Dr. Ware as an expert witness, the Bristers did not file a motion in limine to exclude or limit the testimony of Dr. Ware, nor did they depose Dr. Ware prior to trial.
At trial, Dr. Ware was qualified as an expert without objection by the Bristers and testified without objection by the Bristers. The trial transcript is devoid of any objection by the Bristers to Dr. Ware's testimony and of any request by the Bristers for a status conference regarding the issue of ex parte communication between Dr. Ware and defense counsel.
Failure to contemporaneously object constitutes a waiver of the right to complain on appeal. Zellinger v. Amalgamated Clothing, 28,127 (La.App. 2nd Cir. 4/3/96), 683 So.2d 726; Martinez v. Schumpert Medical Center, 27,000 (La.App. 2nd Cir. 5/10/95), 655 So.2d 649. See also Territo v. Schwegmann Giant Supermarkets, Inc., 95-257 (La.App. 5th Cir. 9/26/95), 662 So.2d 44, and Chauvin v. Jefferson Parish School Board, 595 So.2d 728 (La.App. 5th Cir.1992). The Bristers' failure to contemporaneously object to the testimony of Dr. Ware during trial constitutes a waiver of their right to complain on appeal that Dr. Ware's testimony was prejudicial error. This assignment is without merit.

Jury verdict
The Bristers assert in their second assignment of error that the jury verdict was clearly contrary to the law and evidence.
An appellate court may not set aside a trial court's findings of fact in the *181 absence of clear or manifest error. Lewis v. State, Through DOTD, 94-2730 (La.4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Thompson v. Coates, 29,333 (La.App. 2nd Cir. 5/7/97), 694 So.2d 599. To reverse a trial court's factual determinations, a court of appeal must find, based on the record, that no reasonable factual basis for the findings exists and that the findings are clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987); Thompson v. Coates, supra. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Lewis v. State, Through DOTD, supra; Stobart v. State, Through DOTD, supra; Lebeaux v. Newman Ford, 28,609 (La.App. 2nd Cir. 9/25/96), 680 So.2d 1291; Dismuke v. Quaynor, 25,482 (La.App. 2nd Cir. 4/5/94), 637 So.2d 555, writ denied, 94-1183 (La.7/1/94), 639 So.2d 1164.
The fact finder's choice between two conflicting permissible views of the evidence "cannot be" manifestly wrong. Stobart v. State, Through DOTD, supra. The duty of the fact finder is to evaluate the credibility when testimony is conflicting and to accept or reject any part of a witness' credibility. Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95), 655 So.2d 309. Where the testimony conflicts, the fact finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review by the appellate court. Rosell v. ESCO, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Dr. Lewis Cenac, tendered by the Bristers as a "medical doctor and expert, board certified in the field of psychiatry," examined and performed a "traditional psychiatric evaluation" of Mrs. Brister at Charter Forest Hospital, Shreveport, Louisiana, from July 19 through July 24, 1993. Dr. Cenac opined that the symptoms exhibited by Mrs. Brister during her admission to Humana Hospital on July 13 through July 29, 1992, were consistent with a concussion and were the result of the fall on July 9, 1992, but he admitted that those symptoms could have been caused by other conditions. He further testified that his final diagnosis of Mrs. Brister was senile dementia, Alzheimer type, a progressive neurological condition of which Mrs. Brister exhibited symptoms prior to the July, 1992 accident and which was not related to her fall. Additionally, Dr. Cenac did not recall reviewing a complete record of Mrs. Brister's medical history, did not contact her treating physician, Dr. Leonard Collier, and primarily relied on information from Mrs. Brister's family concerning her medical condition.
Dr. Richard Paddison, qualified as an expert in the field of neurology, reviewed voluminous medical records and assessed Mrs. Brister's condition. His testimony by video deposition established that Mrs. Brister exhibited "some measure of confusion," "impaired mental function," and "severe dysfunction of her brain" prior to her accident. He testified that "probably the head injury led to her being not as functional as she'd been ..." He opined that the fall was a "contracting factor that led to increasing difficulties which led to more aggravation" of her pre-existing conditions. Although he testified that the injury did not "help her any," he testified that her fall did not cause "severe brain damage or a blood clot." Additionally, Dr. Paddison testified that the symptoms exhibited by Mrs. Brister could occur in elderly persons with medical histories similar to Mrs. Brister without any blunt trauma to the head and admitted the possibility that the July 9, 1992 accident "had absolutely no involvement" with symptoms exhibited by Mrs. Brister on July 12, 1992. Dr. Paddison could not conclude "within a reasonable degree of medical probability that the fall was a substantial factor in causing the symptoms that surfaced on July 12, 1992."
Dr. Leonard Collier, Mrs. Brister's treating physician, was qualified as an expert in general surgery and adult family practice. He testified that Mrs. Brister was admitted to Humana Hospital on July 13, 1992, with a urinary tract infection and "for evaluation to rule out a subdural or epidural hematoma." He stated that the symptoms exhibited by Mrs. Brister "could indicate a subdural, epidural hematoma or CVA or stroke." The CT *182 scan did not evidence a hematoma but did show "considerable shrinkage of the brain that you see with aging." Further, Dr. Collier could not attribute the transient ischemic attack suffered by Mrs. Brister on July 17, 1992, to a specific injury. Although he opined that the "fall contributed to her general overall decline," Dr. Collier testified that Mrs. Brister suffered a myocardial infarction, or heart attack, which caused a "rapid ... cascade of events" leading to multiple organ system failure. On the death certificate, Dr. Collier indicated respiratory failure and multiple organ system disease as causes of death.
Dr. Paul Ware testified that he did not "consider the fall a significant in regards to the symptoms that appeared on ... July 12 th." He testified that Mrs. Brister's medical charts did not indicate any alteration of consciousness immediately following the accident on July 9, 1992, that the "first changes in her presentation and mental status took place on the 12 th at 8:00 a.m., which is four days later." Dr. Ware further stated that the "only way a head injury can cause that is when there is clear damage to the brain so that there has been some continuing bleeding." Dr. Ware attributed the symptoms exhibited by Mrs. Brister on July 12, 1992, to a transient ischemic episode. Dr. Ware opined that Mrs. Brister suffered multi-in-part dementia, which is a circulatory problem, and concluded that the July 9, 1992 fall did not hasten her death.
Considering the record evidence, particularly the testimony of four medical experts, we do not find the jury verdict clearly wrong. This assignment is without merit.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court at appellants' cost.
AFFIRMED.
BROWN, J., concurs with written reasons.
BROWN, Judge, concurring.
Mrs. Brister's condition was bad before the accident. I cannot say that the jury's award was not within their discretion. Dr. Ware's testimony, however, violated the spirit of discovery and appropriate practice. Approximately one year after the accident, plaintiff's attorney sent Mrs. Brister to Dr. Cenac at Charter Forest for evaluation. Dr. Ware was on staff at Charter Forest and performed a neurological examination for Dr. Cenac. Dr. Ware's impression was "senile dementia without localizing neurologic signs." Thereafter and unknown to plaintiff's attorney, Dr. Ware was hired by the defense to review all medical reports. Plaintiff was not told of Dr. Ware's employment by the defense, nor of his opinion that Mrs. Brister did not suffer a concussion in the fall. Simply listing Dr. Ware as a witness does not comply with the spirit of fair play.